IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION

IN RE TYSON FOODS, INC.,          *   MDL Docket No. 1854
                                      4:07-MD-1854(CDL)
FAIR LABOR STANDARDS ACT          *
                                      Case Nos.
LITIGATION                        *   1:07-CV-93 (CDL)
                                      *Williams v. Tyson Foods, Inc.*
                                  *   4:07-CV-2004 (CDL)
                                      *Adams v. Tyson Foods, Inc.*
                                  *   4:07-CV-2008 (CDL)
                                      *Joyner v. Tyson Foods, Inc.*
                                  *   4:07-CV-2016 (CDL)
                                      *Balch v. Tyson Foods, Inc.*
                                  *   4:08-CV-2000 (CDL)
                                      *Meyer v. Tyson Foods, Inc.*
                                  *   4:08-CV-2003(CDL)
                                      *Armstrong v. Tyson Foods, Inc.*
                                  *

---

O R D E R

Plaintiffs bring claims against Defendant Tyson Foods, Inc. ("Tyson") for alleged violations of the Fair Labor Standards Act of 1938, 29 U.S.C. §§ 201-219 ("FLSA"). The Judicial Panel on Multidistrict Litigation transferred these actions to this Court for pretrial proceedings. Presently pending before the Court is Tyson's Motion for Partial Summary Judgment based on Section 4 of the Portal-to-Portal Act of 1947, 29 U.S.C. § 254 (Doc. 593 in Master Docket). For the reasons set forth below, that motion is denied. Also before the Court are Tyson's motions for summary judgment as to the Dardanelle and Corydon facilities based upon 29 U.S.C. § 203(o) (Doc. 201 in 4:07-CV-2004 and Doc. 167 in 4:07-CV-2008). As discussed below, those motions are granted in part and denied in part.

SUMMARY JUDGMENT STANDARD

Summary judgment may be granted only "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). In determining whether a *genuine* issue of *material* fact exists to defeat a motion for summary judgment, the evidence is viewed in the light most favorable to the party opposing summary judgment, drawing all justifiable inferences in the opposing party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). A fact is *material* if it is relevant or necessary to the outcome of the suit. *Id.* at 248. A factual dispute is *genuine* if the evidence would allow a reasonable jury to return a verdict for the nonmoving party. *Id.*

FACTUAL BACKGROUND

Based on the Court's review of the parties' briefs and exhibits, as well as the representations made by the parties at oral argument on the pending motions, the Court finds that the following facts are undisputed for purposes of the presently pending summary judgment motions. Plaintiffs are current and former employees at eight Tyson chicken processing plants. Plaintiffs allege that Tyson wrongfully denied them compensation because Tyson did not pay for work they were required to perform while off the clock. At issue in the present motions for summary judgment are Tyson's compensation policies

2

related to pre-production and post-production donning, doffing, and sanitizing of safety and sanitary gear.

Workers at each of the eight plants wear a variety of safety and sanitary gear while on duty. The parties agree that, at a minimum, the vast majority of hourly production employees are required to wear smocks, hairnets, beard nets, gloves, and earplugs. Additional safety and sanitary gear must be worn by some employees. For example, employees are required to wear plastic sleeves under some circumstances; employees with cutting jobs are required to wear additional hand and wrist protection; and some employees are required to wear boots. In general, it is undisputed that for sanitary purposes the employees are not permitted to take sanitary gear such as smocks home with them or into the restroom or break room. The employees are required to sanitize various items of gear before they enter and/or leave the production area. Tyson asserts that it has high standards of cleanliness and sanitation, and Tyson acknowledges that one major reason for the standards is to provide Tyson's customers with a quality and wholesome product. Tyson also notes that certain sanitary and safety gear is required by the federal government, specifically the United States Department of Agriculture ("USDA") and the Occupational Safety and Health Administration ("OSHA").

Plaintiffs contend that they are not paid for the donning, doffing, and sanitizing activities or for the post-donning/pre-doffing time they spend walking to/from the production floor. For

purposes of deciding the pending summary judgment motions, the Court assumes that this assertion is true.

DISCUSSION

## I.   Fair Labor Standards Act

The FLSA requires that employers pay employees for all "hours worked." *See* 29 U.S.C. §§ 206-207.  The term "work" is not defined in the FLSA, but the Supreme Court has defined "work" as "physical or mental exertion (whether burdensome or not) controlled or required by the employer and pursued necessarily and primarily for the benefit of the employer and his business." *IBP, Inc. v. Alvarez*, 546 U.S. 21, 25 (2005) (internal quotation marks omitted).  For purposes of the present summary judgment motions, Tyson does not argue that the donning, doffing, and sanitizing activities are not "work" within the meaning of the FLSA.  However, the activities are not necessarily compensable just because they are "work."  First, under the Portal-to-Portal Act of 1947, work may not be compensable under the FLSA if it is "preliminary to or postliminary to" an employee's "principal activity or activities."  29 U.S.C. § 254(a)(2).  Second, "any time spent in changing clothes or washing at the beginning or end of each workday" is not compensable if it was excluded from compensation under "the express terms of or by custom or practice under a bona fide collective-bargaining agreement."  29 U.S.C. § 203(o).  Third, employees cannot recover for otherwise compensable time if it is *de*

*minimis.  E.g., Anderson v. Mt. Clemens Pottery Co.,* 328 U.S. 680, 692 (1946), *superseded in part* by Portal-to-Portal Act of 1947, codified at 29 U.S.C. §§ 251-262; *Alvarez v. IBP, Inc.*, 339 F.3d 894, 903-04 (9th Cir. 2003), *aff'd*, 546 U.S. 21 (2005).  Tyson does not argue that the present record establishes that time spent donning, doffing, and sanitizing is *de minimis* as a matter of law.  Tyson does argue that it is not required to pay employees for the donning, doffing, and sanitizing activities because the time is excluded from compensable activities under the Portal-to-Portal Act as to all eight plants and is excluded under 29 U.S.C. § 203(o) as to the Dardanelle and Corydon plants.  The Court addresses each argument in turn.

## II.  Portal-to-Portal Act

The Portal-to-Portal Act provides that the following activities are not compensable under the FLSA:

> (1) walking, riding, or traveling to and from the actual place of performance of the principal activity or activities which such employee is employed to perform, and

> (2) activities which are preliminary to or postliminary to said principal activity or activities,

> which occur either prior to the time on any particular workday at which such employee commences, or subsequent to the time on any particular workday at which he ceases, such principal activity or activities.

29 U.S.C. § 254(a).  In *Steiner v. Mitchell*, 350 U.S. 247, 256 (1956), the Supreme Court determined that "activities performed either before or after the regular work shift, on or off the production line, are compensable under the portal-to-portal

5

provisions of the [FLSA] if those activities are an *integral and indispensable part* of the principal activities[.]"  350 U.S. at 256 (emphasis added).  Moreover, an activity is considered a "principal activity" if it is "integral and indispensable" to the principal activities for which the worker is employed.  *Alvarez*, 546 U.S. at 37.  An employer must compensate an employee for time beginning with the employee's first principal activity and ending with the employee's last principal activity.  *See id.*  This includes walking time: "during a continuous workday, any walking time that occurs after the beginning of the employee's first principal activity and before the end of the employee's last principal activity is excluded from the scope of that provision, and as a result is covered by the FLSA."  *Id.*

Tyson asserts that the donning and doffing of safety and sanitary gear constitutes noncompensable "preliminary" and "postliminary" activity that is not "integral and indispensable" to Plaintiffs' principal activities.  Plaintiffs argue, on the other hand, that the donning and doffing of safety and sanitary gear is "integral and indispensable" to their principal activities, so it is not excluded under the Portal-to-Portal Act.

The parties agree that in determining whether an activity is so "integral and indispensable" as to be compensable, the Court must consider the following factors: "(1) whether the activity is required by the employer, (2) whether the activity is necessary for the

employee to perform his or her duties, and (3) whether the activity primarily benefits the employer." *Bonilla v. Baker Concrete Constr., Inc.*, 487 F.3d 1340, 1344 (11th Cir. 2007).  Tyson contends that all three factors weigh against finding that the donning and doffing activities are "integral and indispensable" to Plaintiffs' primary activities.  As discussed below, the Court disagrees.

First, Tyson argues that the donning, doffing, and sanitizing are not "required by" Tyson because it is required by the USDA and OSHA.  Second, Tyson argues that the donning, doffing, and sanitizing are not "necessary" for Plaintiffs to perform their duties because the activities are mandated by government regulations for the purpose of protecting the consumers and not by Tyson for the purpose of completing Plaintiffs' duties.  In support of these arguments, Tyson focuses on *Bonilla*, where construction workers at the Miami airport were required to pass through a single security checkpoint to the tarmac and then ride authorized buses to the work site.  *Bonilla*, 487 F.3d at 1341.  The court concluded that the time spent going through the security screening was not "integral and indispensable" to the workers' primary activities because the screening was required by the Federal Aviation Administration, the employer had no discretion as to whether the employees would be screened, and the employer "did not primarily—or even particularly—benefit from the security regime." *Id.* at 1344.  Tyson argues that *Bonilla* stands for the broad proposition that if a government regulates certain activities, then

7

the employer does not "require" them and they are not "necessary" to the employee's job. This argument ignores *Steiner*, in which the Supreme Court found donning and doffing of protective clothing onsite at a battery plant, as required by industry standards and state law for the prevention of lead poisoning, to be integral and indispensable to the workers' primary activities. *Steiner*, 350 U.S. at 250-51, 256; *see also, e.g., Ballaris v. Wacker Siltronic Corp.*, 370 F.3d 901, 910 (9th Cir. 2004) (noting that "'where the changing of clothes *on the employer's premises* is required by law, *by rules of the employer*, or by the nature of the work,' the activity may be considered integral and indispensable to the principal activities" (quoting 29 C.F.R. § 790.8(c) n.65)).

Tyson acknowledges that its employees are required to wear the following items as a condition of their employment: smocks, hairnets, beard nets, plastic sleeves (for employees wearing long-sleeved shirts), gloves, and earplugs. Although some of these items may be required by government regulation, they are also required by Tyson and are necessary to Plaintiffs' jobs because Tyson could not process and sell uncontaminated chickens without them. Moreover, it is somewhat disingenuous for Tyson to suggest that if there were no government regulations requiring sanitary gear, Tyson would not require similar sanitary methods. Presumably, Tyson does not want hair in its chicken fingers, whether the government allows it or not.

Tyson's third argument on this issue is that the donning, doffing, and sanitizing are primarily to benefit the public health and not primarily to benefit Tyson.  With this argument, Tyson acknowledges that the donning, doffing, and sanitizing are not simply for the safety and convenience of the employees but are for the benefit of Tyson's customers and the consumers who purchase Tyson's products.  *See, e.g., Ballaris*, 370 F.3d at 910-11 (noting that clothes changing that is merely a convenience to employees is not compensable but finding that clothes changing is compensable where uniforms were required to limit contamination of employer's product).  Therefore, unlike in *Bonilla*, where the employer did not benefit from the security regime, 487 F.3d at 1344, it is clear that Tyson benefits from the donning, doffing, and sanitizing because the sanitary requirements are necessary for Tyson to comply with its customers' food safety requirements and for Tyson to produce wholesome, uncontaminated chicken products.  Moreover, a reasonable factfinder could conclude that the sanitary requirements *primarily* benefit Tyson because they enable Tyson to sell its products; the sale of fresh, wholesome chicken benefits Tyson, just as the sale of contaminated chicken would harm Tyson.  *See, e.g., Chao v. Tyson Foods, Inc.*, 568 F. Supp. 2d 1300, 1316-17 (N.D. Ala. 2008) (concluding that genuine issue of material fact existed as to whether Tyson received primary benefit from donning, doffing, and sanitizing activities by chicken processing employees); *see also Helmert v.*

*Butterball, LLC*, No. 4:08CV00342 JLH, 2009 WL 5066759, at *11-*12
(E.D. Ark. Dec. 15, 2009) (finding genuine issues of material fact as
to whether sanitary gear primarily benefitted employer and noting
that sanitary gear was essential so turkey processing employer could
provide uncontaminated food products).  For all of these reasons, the
Court concludes that genuine issues of material fact exist as to
whether the donning, doffing, and sanitizing activities are "integral
and indispensable" to Plaintiffs' primary activities.

      In addition to its arguments regarding the "integral and
indispensable" factors, Tyson also argues that the Supreme Court's
decision in *Steiner* establishes that the donning and doffing
activities at issue here are not compensable.  In *Steiner*, the
employees of a battery plant had to change into and out of work
clothes at the plant and shower after each shift because of the toxic
nature of the chemicals they handled on the job.  *Steiner*, 350 U.S.
at 250.  All gear was stored at the plant, and state law required the
clothes changing and showering.  *Id.* at 250-51.  The Supreme Court
found that the clothes changing and showering activities were
"integral and indispensable" to the employees' primary activity of
battery making because the activities fulfilled mutual obligations
between the employer and employees, because the activities directly
benefitted the employer in the operation of its business, and because
the activities were closely related to other duties performed by the
employees.  *Id.* at 252-53.  The *Steiner* Court acknowledged that

10

changing clothes "under normal conditions" was not involved in that case, *id.* at 249, and Tyson urges the Court to conclude that the donning and doffing here is simply "clothes changing" "under normal conditions" and that under *Steiner*, donning and doffing of sanitary gear is only "integral and indispensable" to a worker's primary activities if the work is done in a dangerous atmosphere. *See Gorman v. Consol. Edison Corp.*, 488 F.3d 586, 593 (2d Cir. 2007) (reading *Steiner* as limited to instances when work is done in lethal atmosphere). The Court rejects this interpretation of *Steiner* and concludes that the donning and doffing of sanitary gear here is not "changing clothes" "under normal conditions." Here, the sanitary gear is required to enable the employer to produce an uncontaminated product. The employees are required to don and doff the sanitary gear, such as smocks and gloves, at the plant and *only* at the plant, and they are not permitted to wear the sanitary gear home or into the restroom or break room. These circumstances are markedly different from "normal" clothes changing, where the clothes are merely a convenience to the employee and the employee can wear the clothes to and from work. *See, e.g., Jordan v. IBP, Inc.*, 542 F. Supp. 2d 790, 809 (M.D. Tenn. 2008) (finding that donning and doffing of sanitary frocks was not "changing of clothes . . . under normal conditions" (internal quotation marks omitted)); *cf. Gorman*, 488 F.3d at 594 (addressing "generic" safety gear—helmet, safety glasses, and steel-toed boots); *Reich v. IBP, Inc.,* 38 F.3d 1123, 1126 (10th Cir. 1994)

11

(finding that donning and doffing safety glasses, ear plugs, hard hat, and safety shoes that could be worn to and from work was not "work" within meaning of FLSA).

As discussed above, there is a genuine issue of material fact as to whether the donning, doffing, and sanitizing activities are "integral and indispensable" to Plaintiffs' principal work activities. *See, e.g., Helmert*, 2009 WL 5066759, at *11-*12 (finding genuine issues of material fact as to whether donning and doffing of sanitary gear was integral and indispensable to turkey processing employees' primary activities); *Gatewood v. Koch Foods of Miss., LLC*, 569 F. Supp. 2d 687, 696-97 (S.D. Miss. 2008) (finding genuine issues of material fact as to whether chicken processing employees' donning and doffing activities were integral and indispensable to their primary activities); *Chao*, 568 F. Supp. 2d at 1316-17 (finding that genuine issue of material fact existed as to whether donning and doffing activities were integral and indispensable to primary activities of chicken processing employees)*; Jordan*, 542 F. Supp. 2d at 809 (holding that donning and doffing of sanitary frocks in beef and pork processing plants was integral and indispensable to employees' primary activities)*; Garcia v. Tyson Foods, Inc.*, 474 F. Supp. 2d 1240, 1246-47 (D. Kan. 2007) (concluding that summary judgment was not appropriate on plaintiffs' claims regarding donning and doffing of protective clothing and gear). Accordingly, Tyson's

12

motion for summary judgment based on the Portal-to-Portal Act is denied.

## III. 29 U.S.C. § 203(o)

Tyson contends that even if the pre-production and post-production donning, doffing, and sanitizing activities are compensable under the FLSA and the Portal-to-Portal Act, they are not compensable at the Dardanelle and Corydon plants under 29 U.S.C. § 203(o).  The FLSA does not require employers to compensate employees for "any time spent in changing clothes or washing at the beginning or end of each workday" that was excluded from compensation under "the express terms of or by custom or practice under a bona fide collective-bargaining agreement."[1] 29 U.S.C. § 203(o).  Tyson argues that § 203(o) excludes the Dardanelle and Corydon Plaintiffs' claims for donning and doffing of sanitary and protective gear because the gear is "clothing" within the meaning of § 203(o) and because there was a custom or practice

---

[1]Tyson acknowledges that the "washing" excluded under § 203(o) is washing of the person and not washing of protective gear.  *See, e.g.,* *Burks v. Equity Group-Eufaula Div., LLC*, 571 F. Supp. 2d 1235, 1244 (M.D. Ala. 2008); *but see Sepulveda v. Allen Family Foods, Inc.*, 591 F.3d 209, 216 n.4 (4th Cir. 2009) (summarily concluding that "washing" applies to washing of the person and washing of gear).  Tyson nonetheless contends that washing of rubber gloves while they are on an employee's hands is "washing of the person" and not washing of protective gear.  Since the term "washing" as used in § 203(o) "is limited to washing one's body and does not include the cleaning and sanitizing of protective clothing," the Court finds that time spent sanitizing safety and sanitary gear, including gloves, cannot be excluded under § 203(o).  *Burks*, 571 F. Supp. 2d at 1244; *see also Saunders v. John Morrell & Co.*, No. C88-4143, 1991 WL 529542, at *4 (N.D. Iowa Dec. 24, 1991) (finding that "washing" under § 203(o) does not include washing of gloves).

13

under the relevant collective bargaining agreements not to pay every hourly employee for some or all of the clothes-changing and washing time.   In the alternative, Tyson contends that it is entitled to summary judgment based on the good faith defense under 29 U.S.C. § 259(a).

Plaintiffs counter that the activities at issue are not "changing clothes" and that even if they are, Tyson has not established a custom or practice of not compensating clothes-changing and washing time.   Plaintiffs argue that even if the donning, doffing, and washing activities are not compensable under § 203(o), the activities are still principal activities that start the workday, so the time spent immediately after donning and immediately before doffing (generally, walking and sanitizing time) is still compensable.   Finally, Plaintiffs assert that Tyson cannot rely on the good faith defense.

A.   "Changing Clothes"

As a preliminary matter, the Court must resolve the issue of which law to apply because there is a circuit split on the meaning of "changing clothes."   In *Anderson v. Cagle's, Inc.*, 488 F.3d 945 (11th Cir. 2007), the Eleventh Circuit adopted a broad definition of the word "clothes" and concluded that donning and doffing protective gear such as smocks, hairnets, beard nets, gloves, and earplugs was "changing clothes" within the meaning of § 203(o).   488 F.3d at 955-56, 958.   The Fourth and Fifth Circuits also adopted this meaning.

14

*Sepulveda v. Allen Family Foods, Inc.*, 591 F.3d 209, 218 (4th Cir. 2009); *Bejil v. Ethicon, Inc.*, 269 F.3d 477, 480 n.3 (5th Cir. 2001) (per curiam).   In contrast, in *Alvarez v. IBP, Inc.*, the Ninth Circuit adopted a narrow definition of the word "clothes" that excluded specialized personal protective gear from the definition of clothing.[2]  339 F.3d at 905.  Even if the Court were to conclude, as Plaintiffs suggest, that Eleventh Circuit precedent is not binding on this Court in this MDL proceeding because the Court should apply the law of the transferor courts, Plaintiffs have not pointed the Court to any binding authority on this issue from the Seventh Circuit Court of Appeals or the Eighth Circuit Court of Appeals that is different from the Eleventh Circuit's decision in *Cagle's*, and the Court can find none.[3]

The Court finds that the Fourth, Fifth, and Eleventh Circuit precedent on this issue is persuasive authority that should be followed here.  Those courts looked to the plain meaning of the statute's language and interpreted the words using their ordinary meaning.  *Cagle's*, 488 F.3d at 955; *accord Sepulveda*, 591 F.3d at 214.  The courts looked to the dictionary definition of "clothes" and

---

[2]The Ninth Circuit also concluded that the district court correctly found that time the employees in that case spent donning and doffing "non-unique protective gear such as hardhats and safety goggles" was not compensable because it was *de minimis*.  *Alvarez*, 339 F.3d at 903.

[3]The case involving the Dardanelle plant, which is located in Arkansas, originated in the Eighth Circuit.  The case involving the Corydon plant, which is located in Illinois, originated in the Seventh Circuit.

concluded that both protective gear and uniforms worn in the workplace are "clothes" because they are "'covering for the human body or garments in general: all the garments and accessories worn by a person at any one time.'" *Cagle's*, 488 F.3d at 955 (quoting Webster's Third New International Dictionary 428 (unabridged) (1986)); *accord Sepulveda*, 591 F.3d at 214-15. They also looked to the meaning of the word "change" and found that to "change" means "'to make different,' that is 'to modify in some particular way but short of conversion to something else.'" *Cagle's*, 488 F.3d at 956 (quoting Webster's Third New International Dictionary 373); *accord Sepulveda*, 591 F.3d at 216. Thus, the courts concluded that "one need not exchange clothes to change clothes for the purpose of applying § 203(o)" and that the act of donning and doffing safety and sanitary gear fits within the meaning of "changing clothes." *Cagle's*, 488 F.3d at 956, 958; *accord Sepulveda*, 591 F.3d at 216. Accordingly, the Court concludes that donning and doffing of sanitary and protective gear such as smocks, hairnets, beard nets, gloves, and earplugs is "changing clothes" within the meaning of § 203(o). *Cagle's*, 488 F.3d at 956, 958; *see also Sepulveda*, 591 F.3d at 218; *Bejil*, 269 F.3d at 480 n.3; *Andrako v. U.S. Steel Corp.*, 632 F. Supp. 2d 398, 410-11 (W.D. Pa. 2009); *Figas v. Horsehead Corp.*, No. 06-1344, 2008 WL 4170043, at *12 (W.D. Pa. Sept. 3, 2008); *Gatewood*, 569 F. Supp. 2d at 700 n.24.

16

B.   Collective Bargaining Agreements

Plaintiffs argue that even if the protective gear at issue here is "changing clothes" within the meaning of § 203(o), there was no custom or practice of non-compensation under a bona fide collective bargaining agreement.  A practice of non-compensation exists under a bona fide collective bargaining agreement if the employer does not compensate employees for a given activity and if the employees have knowledge of the practice and acquiesce to the practice.  *E.g., Allen v. McWane, Inc.*, 593 F.3d 449, 457 (5th Cir. 2010); *Turner v. City of Philadelphia*, 262 F.3d 222, 226 (3d Cir. 2001); *Sisk v. Sara Lee Corp.*, 590 F. Supp. 2d 1001, 1010 (W.D. Tenn. 2008).  Acquiescence can be found where a union seeks compensation for a particular activity during bargaining but the resulting agreement does not provide for compensation of that activity.  *E.g., Bejil*, 269 F.3d at 479-80 (noting that it is not necessary for bargaining agreement to state explicitly that union agreed to non-compensation*); Arcadi v. Nestle Food Corp.*, 38 F.3d 672, 675 (2d Cir. 1994) ("If the parties to a collective bargaining agreement negotiate over an issue and have an understanding that resolves it, then a 'practice' exists, even in the absence of express written terms."); *Hoover v. Wyandotte Chems. Corp.*, 455 F.2d 387, 389 (5th Cir. 1972) (finding that union's abandonment of demand for more compensable time amounted to acquiescence to employer's compensation practice).  The absence of negotiations on the issue is not dispositive.  If the employees and

17

their union know that the employees are not compensated for a particular activity and if they reach a collective bargaining agreement that does not address compensation for that activity, then a "practice" of non-compensation exists under the collective bargaining agreement. *Cagle's*, 488 F.3d at 958-59; *Gatewood*, 569 F. Supp. 2d at 701; *cf. Figas*, 2008 WL 4170043, at *15 (finding no acquiescence to policy of non-compensation because failure to bargain regarding contested time was based on employees' lack of awareness about entitlement to compensation rather than a form of bargaining prerogative).

Here, Local 2008 of the United Food and Commercial Workers International Union ("UFCW") has represented hourly workers at the Dardanelle plant since at least 1980, and Local 227 of the UFCW has represented hourly workers at the Corydon plant since at least 1995. The parties agree that the collective bargaining agreements in effect at Dardanelle and Corydon from June 1996 to the present were silent on the issue of whether Tyson was required to compensate employees for the donning, doffing, and sanitizing activities at issue here. They also agree that Tyson did not compensate Plaintiffs for some or all of the time they spent on the required donning, doffing, and sanitizing activities.[4]  Plaintiffs apparently do not dispute that there was a practice of non-compensation for donning, doffing, and

---

[4] Tyson contends that it did pay for two minutes of donning and doffing time at Dardanelle, but there is a fact issue as to whether this time was actually paid.

sanitizing prior to 1997.  They do contend, however, that there was a material increase to the donning, doffing, and sanitizing requirements in 1997 such that any pre-1997 practice of non-compensation should not be considered in determining that there was a custom or practice of non-compensation after 1997.  Plaintiffs also assert that there was never a custom or practice of non-compensation after 1997 because the UFCW actively opposed the non-payment after 1997.  First, in 1998, the UFCW filed a grievance regarding the non-payment for donning and doffing at both Dardanelle and Corydon.  Second, the UFCW raised the issue of non-payment during negotiations of what became the 1998 collective bargaining agreement at Dardanelle and the 1999 collective bargaining agreement at Corydon.  Plaintiffs assert, however, that Tyson and the UFCW agreed to let the dispute be resolved by litigation that was expected to be filed against Tyson.  Therefore, no language was included in the collective bargaining agreements as to whether Tyson was required to compensate employees for donning, doffing, and sanitizing activities.

It is clear that Tyson had a practice of not compensating its employees for some or all of the time they spent donning and doffing safety and sanitary gear.  Plaintiffs contend, however, that there was never a "practice" for purposes of § 203(o) because the employees never acquiesced to it since the unions and Tyson agreed to resolve the issue through litigation instead of the collective bargaining process.  The Court rejects Plaintiffs' argument that a mere agreement to disagree and let the issue be decided by litigation

19

means that the employees have not acquiesced to the practice. The agreement to disagree does not diminish the fact that the practice was for Tyson not to pay its employees for some or all of the time they spent donning and doffing safety and sanitary gear. The agreement to disagree also does not diminish the fact that the employees have, in effect, acquiesced to this practice by agreeing to a collective bargaining agreement that does not provide compensation for these activities. To hold otherwise "would constitute a holding that what a union fails to achieve through the process of collective bargaining will be delivered to it under the provisions of the Fair Labor Standards Act." *Hoover*, 455 F.2d at 389. Here, the employees knew they were not being paid for some or all of the donning and doffing activities, and the unions tried unsuccessfully to achieve a collective bargaining agreement that included compensation for these activities. As a result, they reached collective bargaining agreements that are silent on the issue of compensation for donning and doffing, and Tyson continued its practice of not compensating the employees for some or all of the time they spent donning and doffing safety and sanitary gear. For these reasons, the Court concludes that there was a practice of non-compensation under a bona fide collective bargaining agreement. Therefore, Tyson is entitled to

summary judgment on the Corydon and Dardanelle Plaintiffs' claims related to time for donning and doffing sanitary and safety gear.[5]

C.   Post-Donning/Pre-Doffing Time

Plaintiffs contend that even if time spent donning and doffing of sanitary and protective gear is excluded under § 203(o), the donning and doffing activities still commence the "continuous workday."  Thus, Plaintiffs argue, time spent on post-donning/pre-doffing activities, such as sanitizing and walking to the production floor, is compensable, even if the donning and doffing itself is not. Under the "continuous workday" rule, "the 'workday' is generally defined as 'the period between the commencement and completion on the same workday of an employee's principal activity or activities.'" *Alvarez*, 546 U.S. at 29 (quoting 29 C.F.R. § 790.6(b)).  As discussed above, employees must be compensated for activities that are integral and indispensable to their principal activities, and an activity is considered a "principal activity" if it is integral and indispensable to the principal activities for which the worker is employed. *Id.* at 37.

Plaintiffs contend that § 203(o) only relates to the *compensability* of time spent donning, doffing, and washing the person—not to the question whether those tasks are integral and indispensable to an employee's principal activity.  If the donning

---

[5]To the extent that Plaintiffs are seeking to be compensated for time they spent waiting to don the first piece of gear, including any time spent retrieving the gear from a locker, that time is also not compensable.  *Alvarez*, 546 U.S. at 40-42.

and doffing is integral and indispensable, Plaintiffs argue, then post-donning/pre-doffing sanitizing and walk time is compensable even if the donning and doffing time itself is not compensable.[6]   The question for the Court is thus whether a § 203(o) activity can be considered a principal activity.   The courts have taken divergent views on this issue.   Several courts have concluded that because § 203(o) only addresses the *compensability* of the donning and doffing time, it does not make the time less integral and indispensable to an employee's job.[7]   *Andrako,* 632 F. Supp. 2d at 413 ("Section 203(o) relates to the *compensability* of time spent donning, doffing, and washing in the collective-bargaining process.   It does not render such time any more or less integral or indispensable to an employee's job."); *Gatewood*, 569 F. Supp. 2d at 702 & n.31 (finding that commencement of donning and doffing could trigger continuous workday rule because § 203(o) does not affect the fact that donning and doffing could be the first integral and indispensable acts performed by employees); *Figas*, 2008 WL 4170043, at *20 ("[T]he *character* of donning and doffing activities is not dependent upon whether such activities are excluded pursuant to a collective-bargaining

---

[6]As discussed above, genuine issues of material fact exist as to whether donning and doffing of safety and sanitary gear is integral and indispensable to the Tyson employees' jobs.

[7]Again, § 203(o) provides that in determining "hours worked," "there shall be excluded any time spent in changing clothes or washing at the beginning or end of each workday which was excluded from measured working time during the week involved by the express terms of or by custom or practice under a bona fide collective-bargaining agreement."

agreement."); *cf. Alvarez,* 546 U.S. at 39-40 (noting that it was error to reach categorical conclusion that post-donning/pre-doffing walking time was not compensable simply because donning and doffing time itself was *de minimis* and therefore not compensable); *Sepulveda*, 591 F.3d at 211 (noting that court's holding that donning and doffing may be excluded from compensable work time "does not mean that employees should not be paid for time spent donning and doffing protective gear.  Instead, it simply recognizes that the purpose of Section 203(o) is to leave this issue to the collective-bargaining process.").  Therefore, according to these courts, post-donning and pre-doffing activities are compensable under the continuous workday rule, assuming the donning and doffing are integral and indispensable to the employees' principal activity.  *Andrako,* 632 F. Supp. 2d at 413; *Gatewood*, 569 F. Supp. 2d at 702 & n.31; *Figas*, 2008 WL 4170043, at *20 ("A determination to the contrary would expand § 203(o)'s exclusion beyond donning, doffing[,] and washing time to include post-donning and pre-doffing travel time, which is not mentioned therein.").  In contrast, in *Sisk v. Sara Lee Corp.,* the district court for the Western District of Tennessee, relying chiefly on an opinion letter from the Department of Labor ("DOL"), concluded that a § 203(o) activity cannot be considered a principal activity.  590 F. Supp. 2d at 1011.  The DOL letter summarily states that because § 203(o) activities are excluded from time that would otherwise be "hours worked," "activities covered by [§ 203(o)] cannot be

considered principal activities and do not start the workday." Wage & Hour Div., U.S. Dep't of Labor, Opinion Letter, 2007 WL 2066454 (May 14, 2007).[8]

After considering both of these positions, the Court concludes that § 203(o) only relates to the compensability of time spent donning, doffing, and washing of the person and that it does not mean that § 203(o) tasks cannot be considered principal activities that start the continuous workday. Therefore, post-donning/pre-doffing sanitizing and walking time may be compensable even if the donning and doffing time itself is not compensable, so long as the donning and doffing is found to be integral and indispensable to the employees' principal activities. Because genuine issues of material fact exist as to whether donning and doffing of safety and sanitary gear is integral and indispensable to the Tyson employees' jobs, summary judgment is not appropriate on this issue.

## D.   Good Faith Defense

Tyson contends that it is shielded from liability by the good faith defense provision of 29 U.S.C. § 259 regarding the claims arising from the Dardanelle and Corydon plants. As previously explained, summary judgment is granted based upon § 203(o) as to the donning and doffing claims arising from those plants. To the extent

---

[8]While an agency opinion letter is entitled to deference to the extent it is persuasive, *see Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944), the Court is not persuaded by the 2007 DOL letter on the "principal activity" issue because the letter contains no analysis of how or whether § 203(o) changes an integral and indispensable activity to one that is not a principal activity.

Tyson asserts the good faith defense as to the remaining claims arising from those plants, the Court finds that genuine issues of material fact exist precluding summary judgment on that defense.

Section 259 protects employers from liability if they took certain actions in reliance on a government agency's interpretation of the law.  In pertinent part, § 259(a) reads:

> [N]o employer shall be subject to any liability or punishment for or on account of the failure of the employer to pay minimum wages or overtime compensation under the [FLSA] . . . if he pleads and proves that the act or omission complained of was in good faith in conformity with and in reliance on any written administrative regulation, order, ruling, approval, or interpretation, of the [Administrator of the Wage and Hour Division of the Department of Labor], or any administrative practice or enforcement policy of such agency with respect to the class of employers to which he belonged.

To be insulated from liability under § 259, an employer must show that "the act or omission complained of was (1) taken in good faith and was (2) in conformity with and (3) in reliance on a written administrative interpretation" by the Administrator of the Wage and Hour Division of the Department of Labor.  *Cole v. Farm Fresh Poultry, Inc.*, 824 F.2d 923, 926 (11th Cir. 1987); *accord Alvarez*, 339 F.3d at 908.  The good faith defense requires that the employer act as a reasonably prudent employer would have acted under similar circumstances.  *Cole*, 824 F.2d at 926.

Tyson is not asserting a good faith defense as to its pre-2002 compensation practices.  Tyson only contends that it is entitled to the good faith defense as to its compensation practices after

June 6, 2002, which is when the Administrator of the Wage and Hour Division of the Department of Labor issued an opinion letter stating that "the term 'clothes' in section 3(o) includes the protective safety equipment typically worn by meat packing employees" and that donning and doffing of such equipment may therefore be excluded from compensation under § 203(o).  Wage & Hour Div., U.S. Dep't of Labor, Opinion Letter, 2002 WL 33941766 (June 6, 2002).  The 2002 DOL letter reversed the Administrator's previous position on this issue, which was that § 203(o) did not apply to donning and doffing safety gear worn by meat packers.  *E.g.,* Wage & Hour Div., U.S. Dep't of Labor, Opinion Letter, 1997 WL 998048 (Dec. 3, 1997).

The Court concludes that summary judgment is not appropriate on the question whether Tyson is entitled to the good faith defense as to its post-2002 conduct because genuine issues of material fact exist as to whether Tyson acted in conformity with and relied upon the 2002 DOL letter in continuing its compensation policy.  The 2002 DOL letter dealt only with § 203(o) activity, and, as discussed above, Plaintiffs raise claims for activities falling outside the scope of § 203(o).  The 2002 DOL letter provided no guidance on any issue outside the narrow § 203(o) "clothes" and "washing" question, so Tyson could not rely upon the letter in concluding that it was correct to continue its policy of not compensating employees for pre- and post-production activities.  Again, there are genuine issues of material fact as to whether the pre- and post-production activities

are compensable and as to whether Tyson compensated Plaintiffs for time spent on these activities.

CONCLUSION

For the reasons set forth above, the Court denies Tyson's Motion for Partial Summary Judgment based on the Portal-to-Portal Act (Doc. 593 in Master Docket), and the Court grants in part and denies in part Tyson's motions for summary judgment as to the Dardanelle and Corydon facilities based upon 29 U.S.C. § 203(o) (Doc. 201 in 4:07-CV-2004 and Doc. 167 in 4:07-CV-2008).

IT IS SO ORDERED, this 16th day of March, 2010.

S/Clay D. Land
CLAY D. LAND
UNITED STATES DISTRICT JUDGE