IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION

| | | |
|---|---|---|
| IN RE TYSON FOODS, INC., | * | MDL Docket No. 1854 |
| | | 4:07-MD-1854(CDL) |
| FAIR LABOR STANDARDS ACT | * | |
| | | Case No. |
| LITIGATION | * | 1:07-CV-93 (CDL) |
| | | *Williams v. Tyson Foods, Inc.* |
| | * | |

O R D E R

In this action, Defendant's current and former employees claim
that Defendant violated certain provisions of the Fair Labor
Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, at its plant in
Dawson, Georgia.  Defendant agreed to conditional certification of an
opt-in class, and potential opt-in class members received notice and
an opportunity to consent to join this action.  A number of
individuals filed consents to join this action.  Defendant contends
that twelve of the opt-in Plaintiffs ("Plaintiffs") failed to
disclose their claims against Defendant during their bankruptcy
proceedings and that Plaintiffs' claims are thus barred by the
doctrine of judicial estoppel.  Presently pending before the Court is
Defendant's motion for partial summary judgment on judicial estoppel
grounds (ECF No. 178).  For the reasons set forth below, the motion
is granted.

SUMMARY JUDGMENT STANDARD

Summary judgment may be granted only "if the pleadings, the
discovery and disclosure materials on file, and any affidavits show

that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). In determining whether a *genuine* issue of *material* fact exists to defeat a motion for summary judgment, the evidence is viewed in the light most favorable to the party opposing summary judgment, drawing all justifiable inferences in the opposing party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). A fact is *material* if it is relevant or necessary to the outcome of the suit. *Id.* at 248. A factual dispute is *genuine* if the evidence would allow a reasonable jury to return a verdict for the nonmoving party. *Id.*

FACTUAL BACKGROUND

Unless otherwise noted, the following facts are undisputed for purposes of summary judgment.

## I.   **All Plaintiffs**

Plaintiffs are current or former hourly chicken processing employees of Defendant. Plaintiffs each received a notice that told them of the FLSA lawsuit against Defendant and explained Plaintiffs' legal rights and choices with regard to the lawsuit; the notice stated, in pertinent part, that Plaintiffs could join the FLSA lawsuit by signing a consent form and returning it by mail:

> **JOIN THE LAWSUIT** - **Sign a consent form to join this lawsuit. Wait for the result. Be bound by the result of the lawsuit.** By joining the lawsuit, you may get money if

the workers win or get a settlement.  If the workers lose
you will get no money.  If you join this case, you give up
any rights to sue Tyson on your own about the same legal
claims in this lawsuit, and you agree to be bound by the
results in this case, win or lose.

Joint Scheduling & Case Mgmt. Order Attach. A 1, FLSA Lawsuit Notice,

Jan. 2, 2008, ECF No. 29-2 in 4:07-md-1854 [hereinafter FLSA Notice].

Each Plaintiff joined the FLSA action by completing a consent form,

which states:

> I have been employed by Tyson Foods at its plant in Dawson
> as an hourly chicken processing worker. I consent to become
> a party plaintiff in an action against Tyson Foods under
> the Fair Labor Standards Act which claims that chicken
> processing workers were not paid by Tyson for all hours
> worked. By joining this lawsuit, I designate the
> plaintiff(s) named in the complaint, including Mary
> Williams, as my representatives, to the fullest extent
> possible under applicable laws, to make decisions on my
> behalf concerning the litigation, the method and manner of
> conducting and resolving the litigation, and all other
> matters pertaining to this lawsuit. I choose to be
> represented by class counsel Morgan & Morgan, and other
> lawyers they associate with. I authorize my attorneys to
> take any steps necessary to pursue my claims, including
> filing new lawsuits.

*E.g.*, Def.'s Statement of Undisputed Material Facts Ex. 6, Bogans

Consent Form, ECF No. 179-3.

## II.  Willie Bogans

On October 10, 2005, Willie Bogans petitioned for bankruptcy

protection under Chapter 13 of the United States Bankruptcy Code.  He

is represented by counsel in his bankruptcy proceeding, which is

pending in the United States Bankruptcy Court for the Middle District

3

of Georgia.  The Chapter 13 Schedule B-Personal Property form asked Bogans to report any contingent and unliquidated claims, and the Statement of Financial Affairs asked Bogans to list all lawsuits to which Bogans was a party at the time of the bankruptcy proceeding. Bogans's Chapter 13 bankruptcy plan was confirmed on January 31, 2006.  On May 21, 2008, Bogans consented to join the FLSA litigation. Pls.' Mem. in Opp'n to Def.'s Mot. for Summ. J. Ex. H, Webber Decl. ¶ 2, ECF No. 187-3 [hereinafter Webber Decl.].  Bogans's bankruptcy case has not been closed, dismissed, or converted, and Bogans had not, as of the filing of Defendant's summary judgment motion, filed any documents in his bankruptcy case that disclosed his claims against Defendant.

## III.  Constance Carter

Constance Carter petitioned for Chapter 13 bankruptcy protection on August 31, 2006.  She is represented by counsel in the bankruptcy proceeding, which is pending in the United States Bankruptcy Court for the Middle District of Georgia.  The Chapter 13 Schedule B-Personal Property form asked Carter to report any contingent and unliquidated claims, and the Statement of Financial Affairs asked Carter to list all lawsuits to which Carter was a party at the time of the bankruptcy proceeding.  In response, Carter disclosed an action brought by her against AAA Finance.  Carter's Chapter 13 bankruptcy plan was confirmed on January 3, 2007.  One of

4

Carter's creditors sought relief from the bankruptcy court's automatic stay because Carter had not stayed current on her payments, and the bankruptcy court entered a consent order granting the creditor's motion for relief from the stay on June 9, 2008. Carter consented to join the FLSA litigation on June 2, 2008. Webber Decl. ¶ 2. Carter's bankruptcy has not been closed, dismissed, or converted, and Carter had not, as of the filing of Defendant's summary judgment motion, filed anything in her bankruptcy case that disclosed her claims against Defendant.

Carter stated that she "did not know or understand that, when [she] opted into the lawsuit against [Defendant] . . . , [she] acquired a new asset" or that the FLSA lawsuit "might be considered property of the bankruptcy estate." Pls.' Mem. in Opp'n to Def.'s Mot. for Summ. J. Ex. C, Carter Decl. ¶¶ 7-8, ECF No. 187-3. Carter also stated that she "knew that [she] should contact [her] bankruptcy attorney if [she] had problems with [her] creditors after [her] plan was confirmed or if [she] lost [her] job, but [she] did not know or understand that [she] was required to change, update or amend any of [her] bankruptcy papers to add the lawsuit." *Id.* ¶ 9. Finally, Carter stated that she "was not trying to hide [her] assets from [her] creditors, the bankruptcy court, or anyone else." *Id.* ¶ 12.

## IV.   Vivian Mansfield Duncan

On September 20, 2006, Vivian Mansfield Duncan petitioned for bankruptcy protection under Chapter 13 of the United States Bankruptcy Code.[1]  She is represented by counsel in the bankruptcy proceeding, which is pending in the United States Bankruptcy Court for the Middle District of Georgia.  The Chapter 13 Schedule B-Personal Property form asked Duncan to report any contingent and unliquidated claims, and the Statement of Financial Affairs asked Duncan to list all lawsuits to which Duncan was a party at the time of the bankruptcy proceeding.  Duncan's Chapter 13 bankruptcy plan was confirmed on January 30, 2007.  Duncan consented to join the FLSA litigation on May 28, 2008.  Webber Decl. ¶ 2.  On June 12, 2008, the bankruptcy trustee moved to dismiss Duncan's bankruptcy plan based on Duncan's failure to stay current on her payments, though the trustee later withdrew the motion to dismiss.  Def.'s Statement of Undisputed Material Facts Ex. 14, Duncan Bankr. Ct. Docket, Docs. 33-34, ECF No. 179-4.  Duncan's bankruptcy has not been closed, dismissed, or converted, and Duncan had not, as of the filing of Defendant's summary judgment motion, filed any documents in her bankruptcy case that disclosed her claims against Defendant.

------

[1]Duncan had previously petitioned for bankruptcy under Chapter 13 in 1998 and was discharged in 2002.

Duncan stated that she "did not know or understand that, when [she] opted into the lawsuit against [Defendant] . . . , the lawsuit was considered a new asset" or that "the lawsuit might be considered property of the bankruptcy estate." Pls.' Mem. in Opp'n to Def.'s Mot. for Summ. J. Ex. D, Duncan Decl. ¶¶ 7-8, ECF No. 187-3. Duncan also stated that she thought her responsibility "was to make [her] payments and to let [her] bankruptcy lawyer know if [she] lost [her] job or had any other change in [her] income," and she did not know that she might need to update her bankruptcy case until Defendant filed its summary judgment motion. *Id.* ¶¶ 10-11. Duncan further stated that she "did not intend to hide any assets from [her] creditors, the bankruptcy court, or anyone else." *Id.* ¶ 12.

## V.    **Walter Flowers**

On May 9, 2007, Walter Flowers petitioned for bankruptcy protection under Chapter 13 of the United States Bankruptcy Code. He was represented by counsel in his bankruptcy proceeding, which was filed in the United States Bankruptcy Court for the Middle District of Georgia. The Chapter 13 Schedule B-Personal Property form asked Flowers to report any contingent and unliquidated claims, and the Statement of Financial Affairs asked Flowers to list all lawsuits to which Flowers was a party at the time of the bankruptcy proceeding. Flowers's Chapter 13 bankruptcy plan was confirmed on August 22, 2007. Flowers consented to join the FLSA litigation on April 30,

7

2008. Webber Decl. ¶ 2. On August 4, 2008, Flowers filed a notice of voluntary conversion to Chapter 7 under Section 1307(a) of the Bankruptcy Code. An order discharging Flowers from bankruptcy was entered on December 10, 2008. Flowers filed no documents in his bankruptcy case that disclosed his claims against Defendant.

## VI. Elizabeth Hawkins

Elizabeth Hawkins petitioned for Chapter 13 bankruptcy protection on February 7, 2008.[2] She is represented by counsel in the bankruptcy proceeding, which is pending in the United States Bankruptcy Court for the Middle District of Georgia. The Chapter 13 Schedule B-Personal Property form asked Hawkins to report any contingent and unliquidated claims, and the Statement of Financial Affairs asked Hawkins to list all lawsuits to which Hawkins was a party at the time of the bankruptcy proceeding. Hawkins's Chapter 13 bankruptcy plan was confirmed on April 30, 2008. Hawkins consented to join the FLSA litigation on May 5, 2008. Webber Decl. ¶ 2. Hawkins's bankruptcy has not been closed, dismissed, or converted, and Hawkins had not, as of the filing of Defendant's summary judgment motion, filed any documents in her bankruptcy case that disclosed her claims against Defendant.

---

[2]Hawkins had previously petitioned for bankruptcy under Chapter 7 in 1987 and was discharged in 1987.

Hawkins stated that she "did not know or understand that, when [she] opted into the lawsuit against [Defendant] . . . , the lawsuit was considered a new asset" or that "the lawsuit might be considered property of the bankruptcy estate." Pls.' Mem. in Opp'n to Def.'s Mot. for Summ. J. Ex. B, Hawkins Decl. ¶¶ 7-8, ECF No. 187-3. She further stated that she "knew to contact [her] bankruptcy lawyers about changes to [her] income and [her] car, but [she] didn't know to add the lawsuit to [her] bankruptcy filings" until Defendant filed its summary judgment motion. *Id.* ¶¶ 9-10. Finally, Hawkins stated that she "did not intend to hide any assets from [her] creditors, the bankruptcy court, or anyone else." *Id.* ¶ 12.

## VII. **Barbara Humphries**

On September 6, 2007, Barbara Humphries petitioned for Chapter 13 bankruptcy protection. She is represented by counsel in the bankruptcy proceeding, which is pending in the United States Bankruptcy Court for the Middle District of Georgia. The Chapter 13 Schedule B-Personal Property form asked Humphries to report any contingent and unliquidated claims, and the Statement of Financial Affairs asked Humphries to list all lawsuits to which Humphries was a party at the time of the bankruptcy proceeding. Humphries's Chapter 13 bankruptcy plan was confirmed on January 2, 2008. Humphries consented to join the FLSA litigation on June 10, 2008. Webber Decl. ¶ 2. Humphries's bankruptcy has not been closed,

dismissed, or converted, and Humphries had not, as of the filing of Defendant's summary judgment motion, filed any documents in her bankruptcy case that disclosed her claims against Defendant.

Humphries stated that she "did not know or understand that, when [she] opted into the lawsuit against [Defendant] . . . , [she] acquired a new asset" or that the FLSA lawsuit "might be considered property of the bankruptcy estate."  Pls.' Mem. in Opp'n to Def.'s Mot. for Summ. J. Ex. E, Humphries Decl. ¶¶ 7-8, ECF No. 187-3. Humphries further stated that she "did not know or understand that [she] was required to change, update or amend any of [her] bankruptcy papers to add the lawsuit" until Defendant filed its summary judgment motion.  *Id.* ¶¶ 9-10.  Humphries also stated that she "did not try to hide any assets from [her] creditors, the bankruptcy court, or anyone else."  *Id.* ¶ 12.

## VIII.    Eddie Jackson

Eddie Jackson consented to join the FLSA litigation on May 5, 2008.  Webber Decl. ¶ 2.  Plaintiffs' counsel "calculated the lost wages that [Plaintiffs] would claim for each opt-in if [Plaintiffs] were successful at trial."  *Id.* ¶ 8.  According to Plaintiffs' counsel, "Jackson only worked two weeks during the covered time period, and in neither week did he work forty hours or more, and thus he has no damages" in the FLSA action.  *Id.* ¶ 10.  Given this admission, Defendant contends that Jackson's claims fail as a matter

of law. The Court agrees and concludes that, given Plaintiffs'
admission that Jackson suffered no FLSA damages, Defendant did not
violate the FLSA's minimum wage or overtime provisions with regard to
Jackson. *See* 29 U.S.C. § 206(a) (requiring that employers pay
employees no less than specified minimum wage per hour); *id.*
§ 207(a)(1) (providing that employers may not employ employees for a
workweek longer than forty hours unless the employee is paid at least
time and a half for the overtime); *id.* § 216 (providing right of
action for employees whose employers violate § 206 or § 207 of the
FLSA). Accordingly, Defendant is entitled to summary judgment as to
Jackson's FLSA claims.

## IX.  Elizabeth Marcus

Elizabeth Marcus petitioned for Chapter 13 bankruptcy
protection on March 24, 2004. She was represented by counsel in the
bankruptcy proceeding, which was filed in the United States
Bankruptcy Court for the Middle District of Georgia. The Chapter 13
Schedule B-Personal Property form asked Marcus to report any
contingent and unliquidated claims, and the Statement of Financial
Affairs asked Marcus to list all lawsuits to which Marcus was a party
at the time of the bankruptcy proceeding. Marcus's Chapter 13
bankruptcy plan was confirmed on January 4, 2005. Marcus consented
to join the FLSA litigation on April 29, 2008. Webber Decl. ¶ 2.
Marcus filed no documents in her bankruptcy case that disclosed her

claims against Defendant. An order discharging Marcus from bankruptcy was entered on August 6, 2009.

## X. Marvin Perry

On February 10, 2004, Marvin Perry petitioned for bankruptcy protection under Chapter 13 of the United States Bankruptcy Code. He was represented by counsel in his bankruptcy proceeding, which was filed in the United States Bankruptcy Court for the Middle District of Georgia. The Chapter 13 Schedule B-Personal Property form asked Perry to report any contingent and unliquidated claims, and the Statement of Financial Affairs asked Perry to list all lawsuits to which Perry was a party at the time of the bankruptcy proceeding. Perry's Chapter 13 bankruptcy plan was confirmed on June 1, 2004. Perry consented to join the FLSA litigation on April 30, 2008. Webber Decl. ¶ 2. Perry filed no documents in his bankruptcy case that disclosed his claims against Defendant. An order discharging Perry from bankruptcy was entered on January 15, 2009.

## XI. Olympia Walton

Olympia Walton consented to join the FLSA litigation on May 16, 2008. Webber Decl. ¶ 2. On June 9, 2009, Walton petitioned for Chapter 13 bankruptcy protection. She is represented by counsel in the bankruptcy proceeding, which is pending in the United States Bankruptcy Court for the Middle District of Georgia. The Chapter 13 Schedule B-Personal Property form asked Walton to report any

contingent and unliquidated claims, and the Statement of Financial Affairs asked Walton to list all lawsuits to which Walton was a party at the time of the bankruptcy proceeding.  Walton did not include her FLSA claims against Defendant on her schedule of assets or statement of financial affairs.  Walton's Chapter 13 bankruptcy plan was confirmed on September 1, 2009.  Walton's bankruptcy has not been closed, dismissed, or converted, and Walton had not, as of the filing of Defendant's summary judgment motion, filed any documents in her bankruptcy case that disclosed her claims against Defendant.

## XII.  **Juanita Williams**

Juanita Williams consented to join the FLSA litigation on June 3, 2008.  Webber Decl. ¶ 2.  Williams petitioned for Chapter 13 bankruptcy protection on July 31, 2008.[3]  She was represented by counsel in the bankruptcy proceeding, which was filed in the United States Bankruptcy Court for the Middle District of Georgia.  The Chapter 13 Schedule B-Personal Property form asked Williams to report any contingent and unliquidated claims, and the Statement of Financial Affairs asked Williams to list all lawsuits to which Williams was a party at the time of the bankruptcy proceeding.  In response, Williams disclosed the existence of an action brought by her against Pioneer Credit, but Williams did not include her claims

---

[3]Williams had previously petitioned for bankruptcy under Chapter 13 in 1996 and was discharged in 2000.

against Defendant on her schedule of assets or statement of financial affairs. An order dismissing Williams from bankruptcy due to default was entered on November 13, 2008, and her bankruptcy case was terminated on February 6, 2009. Williams filed no documents in her bankruptcy case that disclosed her claims against Defendant.

## XIII.    Annie Wilson

Annie Wilson consented to join the FLSA litigation on May 9, 2008. Webber Decl. ¶ 2. Wilson petitioned for Chapter 13 bankruptcy protection on June 17, 2008.[4] She is represented by counsel in the bankruptcy proceeding, which is pending in the United States Bankruptcy Court for the Middle District of Georgia. The Chapter 13 Schedule B-Personal Property form asked Wilson to report any contingent and unliquidated claims, and the Statement of Financial Affairs asked Wilson to list all lawsuits to which Wilson was a party at the time of the bankruptcy proceeding. In response, Wilson disclosed the existence of actions brought by her against AAA Finance, Bank of Dawson, First Franklin Financial, and Quick Loan, but Wilson did not include her claims against Defendant on her schedule of assets or statement of financial affairs. Wilson's Chapter 13 bankruptcy plan was confirmed on December 2, 2008. Wilson's bankruptcy has not been closed, dismissed, or converted, and

---

[4]Wilson had previously petitioned for bankruptcy under Chapter 13 in 1996 and was discharged in 1998. She also previously petitioned for bankruptcy under Chapter 13 in 2000 and was discharged in 2006.

Wilson had not, as of the filing of Defendant's summary judgment motion, filed any documents in her bankruptcy case that disclosed to her claims against Defendant.

DISCUSSION

Defendant contends that the doctrine of judicial estoppel bars Plaintiffs' claims in this FLSA action.

## I.  Judicial Estoppel Principles

"Judicial estoppel is an equitable doctrine that precludes a party from 'asserting a claim in a legal proceeding that is inconsistent with a claim taken by that party in a previous proceeding.'" *Barger v. City of Cartersville, Ga.*, 348 F.3d 1289, 1293 (11th Cir. 2003) (quoting *Burnes v. Pemco Aeroplex, Inc.*, 291 F.3d 1282, 1285 (11th Cir. 2002)).  The doctrine is "intended to prevent the perversion of the judicial process." *Burnes*, 291 F.3d at 1285 (internal quotation marks omitted).  The purpose of the doctrine "'is to protect the integrity of the judicial process by prohibiting parties from deliberately changing positions according to the exigencies of the moment.'" *Id.* (quoting *New Hampshire v. Maine*, 532 U.S. 742, 749-50 (2001)).  In deciding whether judicial estoppel applies, the courts consider two factors: first, the party against whom judicial estoppel is sought must have asserted a claim in a legal proceeding that is inconsistent with a position made under oath in a prior proceeding; second, "such inconsistencies must be shown to

15

have been calculated to make a mockery of the judicial system." *Id.* (internal quotation marks omitted). The factors "are not inflexible or exhaustive; rather, courts must always give due consideration to all of the circumstances of a particular case when considering the applicability of this doctrine." *Id.* at 1286.

Here, Plaintiffs do not seriously dispute that their failure to disclose their FLSA claims to the bankruptcy court satisfies the first factor.[5] Pls.' Mem. of P. & A. in Opp'n to Def.'s Mot. for Summ. J. 6, ECF No. 188; *see, e.g.*, *Ajaka v. BrooksAmerica Mortg. Corp.*, 453 F.3d 1339, 1344 (11th Cir. 2006) (concluding that debtor took inconsistent positions under oath when he failed to disclose Truth in Lending Act claim to bankruptcy court after his Chapter 13 plan was confirmed); *Barger*, 348 F.3d at 1294 (finding inconsistent positions taken under oath where debtor submitted statement of financial affairs to bankruptcy court without listing pending employment discrimination claim); *Burnes*, 291 F.3d at 1284-86

---

[5] A debtor is required to disclose a claim for legal relief when he petitions for bankruptcy. *De Leon v. Comcar Indus., Inc.*, 321 F.3d 1289, 1290-91 (11th Cir. 2003) (per curiam). A debtor must also disclose changes in his financial situation if he requests to convert his Chapter 13 petition to a Chapter 7 petition. *Burnes*, 291 F.3d at 1286. Furthermore, a bankruptcy court may, under Federal Rule of Bankruptcy Procedure 1009, "require a debtor to amend his schedule of assets to disclose a new property interest acquired after the confirmation of the debtor's plan." *Waldron v. Brown (In Re Waldron)*, 536 F.3d 1239, 1246 (11th Cir. 2008); *see also Ajaka*, 453 F.3d at 1344 (finding that debtor had duty to amend schedule of assets to disclose complaint filed after Chapter 13 plan was confirmed).

(determining that debtor took inconsistent positions under oath because, among other things, he failed to disclose his employment discrimination claim to bankruptcy court, even when he requested conversion from Chapter 13 to Chapter 7 bankruptcy); *Roots v. Morehouse Sch. of Med., Inc.*, Civil Action No. 1:07-cv-00112-JOF, 2009 WL 4798217, at *5 (N.D. Ga. Dec. 8, 2009) (finding that debtors took inconsistent positions under oath when they opted in to FLSA action but did not disclose FLSA action to bankruptcy court).

The question for the Court, therefore, is whether Plaintiffs had the requisite intent for judicial estoppel to apply here. "For purposes of judicial estoppel, intent is a purposeful contradiction—not simple error or inadvertence." *Barger*, 348 F.3d at 1294; *accord Burnes*, 291 F.3d at 1287. "When reviewing potential motive, the relevant inquiry is intent at the time of non-disclosure." *Robinson v. Tyson Foods, Inc.*, 595 F.3d 1269, 1276 (11th Cir. 2010). Deliberate or intentional manipulation "can be inferred from the record where the debtor has knowledge of the undisclosed claims and has motive for concealment." *Barger*, 348 F.3d at 1294 (internal quotation marks omitted). "[A] financial motive to secret assets exists under Chapter 13 as well as under Chapter 7 because the hiding of assets affects the amount to be discounted and repaid." *De Leon*, 321 F.3d at 1291.

For example, in *Burnes*, the record contained sufficient evidence to infer that the plaintiff in a discrimination case engaged in intentional manipulation. The plaintiff pursued his employment discrimination claim but never disclosed it to the bankruptcy court, even when he petitioned to convert from Chapter 13 to Chapter 7 bankruptcy. *Burnes*, 291 F.3d at 1287-88. The plaintiff had knowledge of his employment discrimination claim, and he had a motive to conceal it from the bankruptcy court because it was unlikely for him to receive a Chapter 7 conversion and a no asset discharge had his creditors and the bankruptcy court known of his pending lawsuit. *Id.* at 1288.

Similarly, in *Barger*, the plaintiff knew about her employment discrimination lawsuit when she filed her bankruptcy petition but omitted any reference to the lawsuit in her bankruptcy paperwork; she "appeared to gain an advantage when she failed to list" the discrimination claims on her bankruptcy schedule of assets because, "by omitting the claims, [the plaintiff] could keep any proceeds for herself and not have them become part of the bankruptcy estate." 348 F.3d at 1296. And, like the plaintiff in *Burnes*, the plaintiff in *Barger* received a no asset discharge. *Id.* at 1291. From this, the Eleventh Circuit found "sufficient evidence from which to infer [the plaintiff's] intentional manipulation" and concluded that the inference was not rebutted by the plaintiff's attempt to reopen the

bankruptcy case and amend her filings to include the discrimination claims. *Id.* at 1296-97.

Finally, in *Robinson*, the Eleventh Circuit found that the plaintiff had a motive to conceal her employment discrimination claim from the bankruptcy court—despite the fact that the plaintiff later completed her Chapter 13 bankruptcy plan, repaid her debts, and received a discharge. *Robinson*, 595 F.3d at 1276. The *Robinson* court found that "full monetary repayment does not necessarily preclude a finding of a motive to conceal." *Id.* at 1275. The *Robinson* court further noted that the "application of judicial estoppel does not require that the nondisclosure must lead to a different result in the bankruptcy proceeding. Rather, the motive to conceal stems from the possibility of defrauding the courts and not from any actual fraudulent result." *Id.* (internal citation omitted). The *Robinson* court found that, at the time of the plaintiff's non-disclosure, the plaintiff was not current on her payments to the bankruptcy trustee, so there were legitimate questions about repayment, which created a motive to conceal the employment discrimination claim. *Id.* at 1276. The court concluded that this factor, along with the fact that the plaintiff also failed to disclose a separate worker's compensation claim to the bankruptcy court, gave rise to an inference of intentional manipulation that the plaintiff had not rebutted. *Id.* *But see Strauss v. Rent-A-Center,*

*Inc.*, 192 F. App'x 821, 823 (11th Cir. 2006) (per curiam) (reversing, with minimal discussion, grant of summary judgment on judicial estoppel grounds where plaintiff was not represented by counsel in her bankruptcy proceeding).

The doctrine of judicial estoppel has been applied consistently in the bankruptcy context notwithstanding its often harsh consequences. It does not matter if the non-disclosing party later attempts to correct the failure to disclose. Where, as here, a debtor fails to disclose an asset to the bankruptcy court and that omission is later challenged by an adversary, the debtor may not "back-up, re-open the bankruptcy case, and amend his bankruptcy filings." *Burnes*, 291 F.3d at 1288. To hold otherwise would "suggest[] that a debtor should consider disclosing potential assets only if he is caught concealing them" and would "diminish the necessary incentive to provide the bankruptcy court with a truthful disclosure of the debtors' assets." *Id.* Thus, if Plaintiffs did have a motive to conceal their claims, their present promises to notify the bankruptcy court of their FLSA claims would not prevent the Court from applying judicial estoppel.

## II. Application of Judicial Estoppel in this Action

Plaintiffs cannot seriously dispute that they had knowledge of their FLSA claims. They were notified that they "may get money if the [Tyson] workers win [the FLSA lawsuit] or get a settlement."

20

FLSA Notice 1. Furthermore, in their consent forms, Plaintiffs "consent[ed] to become a party plaintiff in an action against Tyson Foods under the Fair Labor Standards Act which claims that chicken processing workers were not paid by Tyson for all hours worked." *E.g.,* Def.'s Statement of Undisputed Material Facts Ex. 25, Flowers Consent Form, ECF No. 179-6. The question thus becomes whether Plaintiffs had a motive for concealment.

Plaintiff Flowers made an affirmative misrepresentation to the bankruptcy court when he filed his notice of voluntary conversion to Chapter 7 but did not disclose his FLSA claim. Flowers had a motive to conceal his FLSA claim from the bankruptcy court; when Flowers petitioned the bankruptcy court for a conversion to Chapter 7 and received a discharge of his debts, the bankruptcy court accepted his position that Flowers had no additional contingent assets, such as his FLSA claim. From this, the Court concludes that there is sufficient evidence to create an inference of intentional manipulation by Flowers. Flowers has not pointed the Court to any evidence that would rebut this inference, and the Court concludes that judicial estoppel should apply as to Flowers. Accordingly, Defendant is entitled to summary judgment on Flowers's FLSA claims.

Like Flowers, Plaintiffs Walton, Williams, and Wilson each made affirmative misrepresentations to the bankruptcy court when they filed their bankruptcy petitions but failed to disclose their FLSA

claims. Furthermore, at the time of non-disclosure, Walton, Williams, and Wilson had a motive to conceal assets, such as their FLSA claims, "because the hiding of assets affects the amount to be discounted and repaid." *De Leon*, 321 F.3d at 1291; *see also Robinson,* 595 F.3d at 1276 (noting that the relevant inquiry in determining motive is "intent at the time of non-disclosure"). Therefore, the Court finds that there is sufficient evidence to create an inference of intentional manipulation by Walton, Williams, and Wilson.[6] These Plaintiffs have not pointed the Court to any evidence that would rebut this inference, and the Court concludes that judicial estoppel should apply to their FLSA claims. Accordingly, Defendant is entitled to summary judgment on the FLSA claims of Walton, Williams, and Wilson.

The remaining Plaintiffs—Bogans, Carter, Duncan, Hawkins, Humphries, Marcus, and Perry—each filed for bankruptcy before they opted in to the FLSA action. When they opted in to the FLSA action, they did not disclose the FLSA action to the bankruptcy court. At the time of non-disclosure, these Plaintiffs had a motive to conceal assets, such as their FLSA claims, "because the hiding of assets

---

[6]The fact that Williams's bankruptcy case was later dismissed due to default does not mandate a different result. The evidence suggests that Williams had a motive to conceal her FLSA claim *at the time of non-disclosure*. Again, "the motive to conceal stems from the possibility of defrauding the courts and not from any actual fraudulent result." *Robinson*, 595 F.3d at 1275.

affects the amount to be discounted and repaid." *De Leon*, 321 F.3d at 1291. Carter and Duncan had an additional motive to conceal their FLSA claims because they had fallen behind on their payments to the bankruptcy trustee, and there were thus legitimate questions about repayment at the time when they failed to disclose their FLSA claims. *Robinson*, 595 F.3d at 1276 (finding motive to conceal where questions regarding repayment were coupled with expectation of monetary gain). For these reasons, the Court finds that there is sufficient evidence to create an inference of intentional manipulation by Bogans, Carter, Duncan, Hawkins, Humphries, Marcus, and Perry. Duncan and Hawkins have not pointed to any evidence to rebut this inference, and Defendant is entitled to summary judgment on their claims.

Bogans, Carter, and Humphries attempt to rebut the inference of intentional manipulation by arguing that although their potential recovery is expected to be more than $3,000 each, Webber Decl. ¶ 9, their potential recovery in the FLSA action is worth less than their available exemptions, so their FLSA claims are not significant enough to affect their bankruptcies. However, as noted above, the "application of judicial estoppel does not require that the nondisclosure must lead to a different result in the bankruptcy proceeding. Rather, the motive to conceal stems from the possibility of defrauding the courts and not from any actual fraudulent result." *Robinson*, 595 F.3d at 1275 (internal citation omitted). Even if the

23

bankruptcy trustee might, in hindsight, consider these Plaintiffs' FLSA claims to be insignificant, the fact remains that Bogans, Carter, and Humphries never disclosed their claims to the bankruptcy court and thus potentially defrauded the bankruptcy court. The Court finds that Bogans, Carter, and Humphries have not rebutted the inference of intentional manipulation, and Defendant is entitled to summary judgment on their FLSA claims.

Marcus and Perry attempt to rebut the inference of intentional manipulation by arguing that they have each completed their Chapter 13 plan payments and received a discharge from the bankruptcy court. However, "full monetary repayment does not necessarily preclude a finding of a motive to conceal." *Robinson*, 595 F.3d at 1275. Again, "the hiding of assets affects the amount to be discounted and repaid." *De Leon*, 321 F.3d at 1291. Hiding assets may also affect a debtor's payment schedule. For all of these reasons, the Court is not persuaded that Marcus and Perry have rebutted the inference that they had a motive to conceal their FLSA claims from the bankruptcy court. Because Marcus and Perry have not pointed to any additional evidence that would rebut the inference of intentional manipulation, Defendant is entitled to summary judgment on their claims.

## CONCLUSION

For the reasons set forth above, the Court grants Defendant's Motion for Summary Judgment (ECF No. 178).

IT IS SO ORDERED, this 5th day of August, 2010.


                                    S/ Clay D. Land
                                       CLAY D. LAND
                              UNITED STATES DISTRICT JUDGE